**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Chad Lancaster,<br>Plaintiff,<br>v.<br>City of Phoenix, et al.,<br>Defendants. | No. CV-25-03200-PHX-DWL<br>**ORDER** |

Chad Lancaster ("Plaintiff") alleges that he was denied a promotion at the Phoenix Fire Department on account of his race and gender and was subjected to retaliation for reporting that discrimination. (Doc. 1-1 at 2-16.) Plaintiff's complaint asserts six claims: (1) race discrimination under 42 U.S.C. § 1981; (2) a *Monell*-based claim for race discrimination under 42 U.S.C. § 1983; (3) race discrimination in violation of Title VII; (4) sex discrimination in violation of Title VII; (5) retaliation in violation of Title VII; and (6) intentional infliction of emotional distress ("IIED").[1] (*Id.*) The sole defendant named in Counts One and Three through Six is the City of Phoenix ("the City"), and the sole defendant named in Count Two is Jason Rideout ("Rideout"), the chief of the Phoenix Fire Department. (*Id.*)

In a previous order, the Court dismissed Count Two (and thus dismissed Rideout as a defendant) without leave to amend, dismissed Count Six with leave to amend, and

[1] The complaint labeled both the § 1983 claim and the Title VII race discrimination claim as Count Two. (Doc. 1-1 at 11-12.) To avoid confusion, the Court will refer to the latter as Count Three and adjust the count numbers of the remaining claims accordingly.

dismissed Plaintiff's request for punitive damages with leave to amend. (Doc. 16.) In response, Plaintiff asked whether he could amend his complaint more extensively. (Doc. 19.) The Court "clarifie[d] that Plaintiff is free to file a motion under Rule 15(a)(2)," and "[i]f Plaintiff files such a motion, and if Defendants oppose it, the Court will resolve it in due course after considering both sides' arguments." (Doc. 20.)

The time to resolve that dispute is now: Plaintiff has filed a motion for leave to file an amended complaint that would add Rideout as a defendant in Count One, clarify that Count Two is asserted against both the City (under a *Monell* theory) and Rideout (in his individual capacity under a non-*Monell* theory), and reassert his claim for punitive damages against Rideout. (Doc. 21.)[2] The City and Rideout (together, "Defendants") oppose the motion. (Doc. 24.) For the reasons that follow, Plaintiff's leave request is granted except as to the request to add Rideout as a defendant in Count One.

**BACKGROUND**

I. Factual Allegations

Because Plaintiff's proposed amended complaint does not attempt to plead new factual allegations beyond those appearing in the original iteration of his complaint, it is helpful to begin by summarizing the factual allegations that appear there.

A. **Plaintiff's Work History**

On January 7, 2013, Plaintiff was hired by the Phoenix Fire Department. (Doc. 1-1 ¶¶ 1, 10.) He is currently a Fire Department paramedic, and he served as a "move-up Captain for approximately ten years and worked as a rover for 11 years," meaning he was "placed in the Captain's position for overtime around the City." (*Id.* ¶¶ 11-12, 16.) Plaintiff has also received multiple awards and honors as a firefighter, including "the President's Award from the Professional Firefighters of Arizona in 2013," "several Unit Citations for bravery and lifesaving interventions," and a "Record of Exceptional Performance from the Mayor's Office" in March 2025. (*Id.* ¶¶ 14, 17.) Plaintiff "was elected Fire Board Chairman from 2015-2020, with his campaign supported by Local 493

[2] In contrast, Plaintiff does not seek to reassert his IIED claim in Count Six.

and the Professional Firefighters of Arizona." (*Id.* ¶ 18.) "Throughout his career with the Phoenix Fire Department, Plaintiff has never received any disciplinary action, write-ups, or customer complaints," and he is "one of the most requested firefighters for temporary positions due to his exemplary performance and professionalism." (*Id.* ¶¶ 13, 15.)

B. **2021 Captain's Promotional Process**

In 2021, Plaintiff sought promotion through the Captain's promotional process. (*Id.* ¶ 20.) This process consists of a written examination, a tactical examination, and an oral interview. (*Id.* ¶¶ 21-22.) Plaintiff scored 94% on his written examination and 92% on his tactical examination. (*Id.* ¶ 21.) Before his oral interview, "Plaintiff's interview board was changed at the last minute . . . resulting in Chiefs Mike Molitor and [Rideout] being on the board." (*Id.* ¶ 27.) Plaintiff scored only 70% on his oral interview, but "Plaintiff believes that he performed better than scored." (*Id.* ¶¶ 22-23.) Plaintiff also had many of his "colleagues, including Fire Chief Mike Duran, call[] the interview board on Plaintiff's behalf to place their support behind [Plaintiff]." (*Id.* ¶ 26). Despite these efforts, Plaintiff was placed at number 99 on the 2021 Captain's List and did not receive a promotion. (*Id.* ¶ 25.) When asked about Plaintiff's low list placement, Rideout explained that Plaintiff was not up for promotion "because no one had heard your name before," even though "Plaintiff had more Chiefs and Captains call on his behalf than all other candidates combined." (*Id.* ¶ 31.) Rideout also "expressed 'doubts' about Plaintiff's resume because it was 'hands down the best they had seen.'" (*Id.* ¶ 32.)

C. **2023 Captain's Promotional Process**

In 2023, Plaintiff again participated in the Captain's promotional process. (*Id.* ¶¶ 33-38.) Moments before his scheduled interview with a different interview board, "Plaintiff was forced for a second time onto Chief Molitor and [Rideout's] interview board," which was "highly irregular." (*Id.* ¶ 33-34.) Plaintiff scored 86% on his written examination, 78% on his tactical examination, and 80% on his interview, but "Plaintiff believes his Tactical and interview scores were altered." (*Id.* ¶ 35.) In July 2023, Plaintiff was initially placed at number 63 on the Captain's List, but that number was changed twice

in one week: first to 65 and then to 67. (*Id.* ¶¶ 36-37.) The City's Human Resources Department ("HR") "was still making changes to scores for the written exam (held in March) after the list was certified in July." (*Id.* ¶ 38.)

On July 18, 2023, Plaintiff spoke with Rideout about the Captain's promotional process. (*Id.* ¶ 39.) In the conversation, Rideout confirmed that "DEI, gender and race" were used as factors in the process. (*Id.* ¶ 40.) Rideout said that HR, not the Fire Department, altered hiring decisions based on race and gender. (*Id.* ¶ 41.) Although Rideout stated that racial adjustments affected only "fractions of points" on candidates' scores, "[t]he candidates are separated by fractions of points on the entire [Captain's] list." (*Id.* ¶ 42.) Ultimately, Rideout informed Plaintiff that "five factors were used in final scoring: written score, tactical score, oral score, seniority, and racial/gender factors." (*Id.* ¶ 43.) In a different conversation, Rideout told Joe Nonno, another firefighter up for promotion, "the reason you are not being promoted is because you are a white guy." (*Id.* ¶ 44.)

During their July 18, 2023 conversation, Rideout showed Plaintiff a list on which Plaintiff was "surrounded by guys that will be promoted," saying that Rideout "had no control over where Plaintiff was moved after the list left [his] hands." (*Id.* ¶ 45.) Two days later, Chief Russ Kirk ("Kirk") showed Plaintiff a different list that he "was sure not supposed to ever see," which moved Plaintiff "to third from the bottom of all interview scores . . . directly contradicting [Rideout's] claim that Plaintiff" was "surrounded by guys that will be promoted" on the interview scoring list that Rideout provided HR. (*Id.* ¶¶ 45-47.) According to Plaintiff, the discrepancy between these lists "prove[s] that scores and placement are manipulated." (*Id.* ¶ 48.)

On July 7, 2023, Plaintiff tried to raise his grievances with Union President Bryan Willingham ("Willingham"), who refused to help him. (*Id.* ¶ 58.)

D. **Plaintiff's Communications with HR**

On October 6, 2023, Plaintiff met with HR representative Megan Avalos ("Avalos"), who "admitted that [the] fire administration held onto the list for four plus

weeks after the last interview was completed," that "she suspected that scores were being changed and people being moved on the list during this time," and that there were "discriminatory and retaliatory cultures in both the Phoenix Police and Fire Departments." (*Id.* ¶¶ 49-52.) Avalos assured Plaintiff "she had the power to scrap the list." (*Id.* ¶ 53.) She also said she would "keep [Plaintiff's] name out of her investigation" because of his "fear of being assaulted at work or violence towards him on the fire ground, if it was made aware he came forward to City HR." (*Id.* ¶¶ 52, 55.) After Plaintiff sent Avalos the 2021 and 2023 lists, however, she did not contact him again for nearly three weeks. (*Id.* ¶¶ 54, 56.) When Avalos finally reached out to Plaintiff, she promised via email to "dig into" Plaintiff's concerns later that week, but she did not contact Plaintiff again. (*Id.* ¶¶ 56-57.)

E. **Retaliation Against Plaintiff**

On October 27, 2023, "Willingham called Plaintiff and berated him, stating he would never promote Plaintiff if he was on his board because Plaintiff was uneducated, did not know how to speak and rambled." (*Id.* ¶ 60.) Willingham then tried, and failed, to get Plaintiff disciplined. (*Id.*) Around this time, Captain Chris Murphy ("Murphy") began threatening Plaintiff, saying that Murphy could control who was "allowed" to work at their station. (*Id.* ¶ 64.)

On March 3, 2024, even though Plaintiff's complaints had not been made public, a Captain asked Plaintiff "if he was going to bring the department down with a lawsuit." (*Id.* ¶ 69.)

On April 14, 2024, and again on April 17, 2024, Plaintiff "was denied water tanker/tender qualification despite completing and passing the training," even though "all other firefighters present received their qualifications." (*Id.* ¶ 70.)

On May 3, 2024, Plaintiff was moved out of his position at his fire station. (*Id.* ¶ 71.) Then, on July 24, 2024, although Plaintiff was offered a new position "for which he had seniority," "the offer was rescinded in the same phone call due to a 'personal interpretation of policy.'" (*Id.* ¶ 72.) Plaintiff continued to receive daily assignments in his position with the Fire Department. (*Id.* ¶ 75.)

On June 21, 2024, Murphy and Keith Rogers ("Rogers")—who were Union Trustees—"conducted a 'Union Blitz' in front of sixteen plus co-workers" at Plaintiff's fire station, "calling Plaintiff a 'fucking asshole' and falsely stating he was offered and declined a union position." (*Id.* ¶ 61.)

On July 21, 2024, despite having instructions to "not engage or try to humiliate, challenge, or harass" Plaintiff, Murphy threatened to publicly disparage Plaintiff at union meetings and to remove him from the fire station. (*Id.* ¶¶ 64-65.)

On August 16, 2024, "Battalion Chief Rustin Eikleberry made derogatory and false statements about Plaintiff['s] discrimination claim . . . in front of ten [of Plaintiff's] co-workers." (*Id.* ¶ 66.)

On December 10 and 11, 2024, Murphy encouraged Phoenix fire crews to watch a Senate hearing featuring Plaintiff. (*Id.* ¶ 62.) Plaintiff's union, Local 493, sent Murphy to the Arizona state legislature "to disparage Plaintiff publicly," and union officials "sent questions and information to other Senate staff to humiliate and discredit Plaintiff and other firefighters that were scheduled to speak on the discriminatory practices at the Phoenix Fire Department." (*Id.* ¶¶ 62-63.) On December 27, 2024, Murphy adjusted the station schedule to give his friends better positions "while disadvantaging Plaintiff." (*Id.* ¶ 67.)

II. <u>Procedural History</u>

A. **Plaintiff's Original Complaint**

On July 28, 2025, Plaintiff filed the complaint in Arizona state court. (Doc. 1-1.) As noted, Count One is a race discrimination claim under § 1981 against the City; Count Two is a *Monell*-based race discrimination claim under § 1983 against Rideout; Count Three is a Title VII race discrimination claim against the City; Count Four is a Title VII sex discrimination claim against the City; Count Five is a Title VII retaliation claim against the City; and Count Six is an IIED claim against the City. (*Id.*)

B. **Removal and Motion to Dismiss**

On September 2, 2025, Defendants timely removed the action to this Court. (Doc. 1.) Then, on September 23, 2025, Defendants filed a partial motion to dismiss under

Federal Rule of Civil Procedure 12(b)(6). (Doc. 8.) Defendants argued that Plaintiff impermissibly alleged facts outside the relevant statutes of limitations; could not hold Rideout liable in Count Two for various reasons, including that a *Monell* claim applies only to municipalities; did not allege "extreme and outrageous" conduct or "purposeful or reckless" conduct sufficient to support his IIED claim in Count Six; and is not entitled to punitive damages. (*Id.*)

On October 3, 2025, Plaintiff filed a response brief, arguing only that his claims were timely, that he stated a valid § 1981 claim, and that any information included in the complaint that fell outside the applicable statutes of limitations could be used as "background evidence in support of a timely claim." (Doc. 10 at 6-9.)

On March 9, 2026, the Court partially granted and partially denied Defendants' motion to dismiss. (Doc. 16.) The Court agreed with Plaintiff that the claims were not time-barred because "Plaintiff is permitted to plead time-barred discriminatory acts as background evidence." (*Id.* at 12.) The Court also declined to dismiss the § 1981 claim in Count One "in its entirety" because Defendants' only dismissal argument was that it relied partially on untimely allegations. (*Id.* at 15.)

The Court granted Defendants' remaining requests. First, the Court dismissed the *Monell* claim against Rideout in Count Two because "it is only asserted against Rideout in his individual capacity and is not asserted against the City." (*Id.* at 17.) Because Count Two was the only claim against Rideout, the Court dismissed Rideout as a defendant. (*Id.* at 23.) The Court also dismissed the IIED claim in Count Six because the complaint did not allege any "extreme and outrageous" conduct within the applicable statute of limitations. (*Id.* at 20.) Finally, the Court dismissed Plaintiff's request for punitive damages because Rideout had been dismissed and Plaintiff was barred from seeking punitive damages from a municipal defendant. (*Id.* at 21-22.)

Although the Court dismissed Count Two without leave to amend because it "cannot be brought against an individual defendant," the Court granted leave to amend as to Count Six, clarifying that "[a]ny changes shall be limited to attempting to rectify the deficiencies

identified in this order as to which leave to amend was granted." (*Id.* at 23.)

C. **Plaintiff's Motion for Clarification**

On March 23, 2026, Plaintiff filed a motion seeking "confirmation from the Court that its Order is not intended to curtail Plaintiff's right to seek leave to amend the Complaint" under Federal Rule of Civil Procedure 15(a)(2). (Doc. 19 at 1-2.) Plaintiff stated that he intended to abandon his *Monell* and IIED claims and wanted to amend his § 1981 claim to add Rideout as a defendant. (*Id.* at 2.)

The Court granted Plaintiff's motion, clarifying "that Plaintiff is free to file a motion under Rule 15(a)(2) seeking leave to amend his complaint to add Rideout as a defendant in Count One (and to seek punitive damages against Rideout based on this claim.)" (Doc. 20.) This motion was "not subject to a 14-day deadline." (*Id.*) The Court did not address the merits of Plaintiff's proposed amendment, instead stating that if Defendants opposed Plaintiff's amendment request, "the Court will resolve it in due course after considering both sides' arguments." (*Id.*)

D. **Plaintiff's Motion to Amend**

On June 19, 2026, Plaintiff filed the pending motion for leave to amend the complaint. (Doc. 21.) Plaintiff also attached his proposed new pleading (Doc. 21-4) and a redlined version of the proposed new pleading, with the redlines indicating how it differs from the original complaint (Doc. 21-1). The redlines indicate that Plaintiff does not seek to change any of the facts alleged in the original complaint. (*Id.*) With that said, the proposed amended complaint goes further than Plaintiff's previously stated plan to "bring[] Count One (§ 1981 claim) against both Defendants—the City and Rideout" and to seek punitive damages against Rideout. (Doc. 20 at 2.) It updates Count One to be raised against only "Individual Defendant [Rideout]." (Doc. 21-1 ¶¶ 88-99.) As for the § 1983 claim in Count Two, it is now asserted both against the City (on a *Monell* theory of liability) and against Rideout (on a theory of individual liability). (*Id.* ¶¶ 100-111.) Consistent with the March 9, 2026 order, the proposed amended complaint removes the *Monell* claim against Rideout and the IIED claim.

On July 2, 2026, Defendants filed a response. (Doc. 24.)

On July 14, 2026, Plaintiff filed a reply. (Doc. 27.)[3]

## DISCUSSION

I. Legal Standard

A motion for leave to amend is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which "advises the court that 'leave [to amend] shall be freely given when justice so requires.'" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" *Id.* Thus, Plaintiff's amendment request should be granted unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

II. Count One: § 1981 Claim Against Rideout

A. **The Parties' Arguments**

Plaintiff argues that he did not engage in undue delay in seeking amendment and that the proposed § 1981 claim against Rideout is not futile. (Doc. 21 at 4-5.)

In response, Defendants identify two reasons why the proposed § 1981 claim against Rideout is futile. (Doc. 24 at 4-7.) First, Defendants contend the proposed § 1981 claim is against Rideout "in his official capacity as a state actor" because "[n]owhere in the proposed First Amended Complaint does Plaintiff allege that [Rideout] was acting in his personal capacity," and "Rideout is undoubtedly a state actor in these circumstances because, as Plaintiff alleges, he was acting under the color of state law." (*Id.* at 5-6.) According to Defendants, *Yoshikawa v. Seguirant*, 74 F.4th 1042 (9th Cir. 2023) (en banc), compels dismissal in this circumstance. (*Id.*) Second, Defendants argue the proposed § 1981 claim is also futile "because [Plaintiff] has failed to sufficiently allege causation," as he does not allege that he was "in any way prevented from being promoted based on his race or gender. Plaintiff merely did not earn the necessary score to be promoted in the City's merit-based promotion process." (*Id.* at 6-7.)

---

[3] Plaintiff's request for oral argument is denied because the issues are fully briefed and argument would not aid the decisional process. *See* LRCiv 7.2(f).

In reply, Plaintiff contends the proposed § 1981 claim is against Rideout in his individual capacity. (Doc. 27 at 2.) Although Plaintiff agrees that "a plaintiff cannot raise a § 1981 claim against a state actor," he asserts that "[c]ourts in this circuit allow § 1981 claims against a state official in his individual capacity," even if the official was working "under the color of State law." (*Id.* at 2-4.) To support this contention, Plaintiff cites various pre-*Yoshikawa* cases from within the Ninth Circuit. (*Id.*) Alternatively, "[s]hould the Court agree with Defendants that the proposed amended complaint does not adequately state a claim against Rideout in his individual capacity, Plaintiff seeks leave to submit a revised amended complaint clarifying that he seeks to raise a § 1981 claim against Rideout 'in his individual capacity.'" (*Id.* at 4.) As for causation, Plaintiff contends the proposed amended complaint "plausibly allege[s] that his ability to 'enjoy all the benefits, privileges, terms, and conditions of [his] contractual relationship" with the City was "impaired because of Rideout's discriminatory conduct." (*Id.* at 5, cleaned up.) Plaintiff emphasizes that the proposed amended complaint "alleges that Rideout told him that Rideout used race as a factor in rankings" and that the two different lists Plaintiff was shown stemming from the 2023 Captain's promotional process "raise an inference that [Rideout] altered the list of rankings for promotions after showing it to [Plaintiff], and before submitting it to [HR]." (*Id.*)

B. **Analysis**

In *Yoshikawa*, the Ninth Circuit, sitting en banc, overruled its earlier precedent "that a plaintiff may bring a cause of action against state actors alleging violations of 42 U.S.C. § 1981 under both § 1981 and 42 U.S.C. § 1983" and concluded that because § 1981 "does not itself contain a remedy against a state actor," "[a] plaintiff seeking to enforce rights secured by § 1981 against a state actor must bring a cause of action under § 1983." *Yoshikawa*, 74 F.4th at 1044, 1047. "State employment is generally sufficient to render the defendant a state actor," and "a person . . . may fairly be said to be a state actor" when that person's acts are "clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49, 55 (1988).

Plaintiff seeks to assert a § 1981 claim against Rideout based on his conduct while he worked for the City (Doc. 21-1 ¶ 5), served on an interview board for the City (*id.* ¶¶ 27, 33), and implemented the City's allegedly discriminatory policy (*id.* ¶ 97). In each circumstance, Rideout was "clothed with the authority of state law" as a "state actor." *West*, 487 U.S. at 49, 55. Thus, even assuming Rideout's acts could violate the "substantive rights secured by § 1981 against a state actor," Plaintiff may only assert a § 1983 claim against Rideout premised on the violation of those rights. *Yoshikawa*, 74 F.4th at 1047.

Plaintiff's argument that he brings his proposed § 1981 claim against Rideout in an individual capacity is unavailing. Under *Yoshikawa*, liability does not turn on whether a state-actor defendant is sued in an individual or official capacity; instead, the inquiry is simply whether the defendant is a state actor. *Yoshikawa*, 74 F.4th at 1047 ("Section 1981 establishes substantive rights that a state actor may violate. It does not itself contain a remedy against a state actor for such violations. A plaintiff seeking to enforce rights secured by § 1981 against a state actor must bring a cause of action under § 1983."). *See also Price v. Clifton*, 2024 WL 1121812, *1, *5 (C.D. Cal. 2024) (holding that "to the extent the new Section 1981 claims are intended to constitute extant claims, they are not viable, because the Ninth Circuit has made clear that Section 1981 does not provide for an implied cause of action against state actors," even though the plaintiff sued "the sole remaining [d]efendant" in "his individual capacity only"); *Talley v. City of North Las Vegas*, 2024 WL 4557289, *2 (D. Nev. 2024) (where only "[c]laims against Defendants in their individual capacity remain[ed]," dismissing the "Plaintiff's § 1981 claim, with leave to refile as a § 1983 claim," because a "plaintiff seeking to enforce rights secured by § 1981 against a state actor must bring a cause of action under § 1983").

The cases cited by Plaintiff do not compel a different conclusion. In *Magassa v. Mayorkas*, 52 F.4th 1156 (9th Cir. 2022), decided before the Ninth Circuit's en banc decision in *Yoshikawa*, the Ninth Circuit examined whether a defendant was sued in his individual or official capacity only to determine whether sovereign immunity deprived the district court of jurisdiction over the defendant. *Id.* at 1161-62. In *Bell v. Clackamas*

*County*, 341 F.3d 858 (9th Cir. 2003), another pre-*Yoshikawa* decision, the Ninth Circuit allowed a suit against state-actor defendants "under 42 U.S.C. §§ 1981 and 1983." *Id.* at 867. But that is exactly the approach *Yoshikawa* now forbids. Finally, in *Binum v. Warner*, 2007 WL 54778 (D. Or. 2007), another pre-*Yoshikawa* decision, the court cited *Bell* in support of the proposition that "[s]ection 1981 permits a cause of action against individual state actors if the individual was personally involved in the discrimination and intentionally caused the infringement of rights protected by § 1981." *Id.* at *2. Once again, that approach is no longer good law post-*Yoshikawa*.

For these reasons, Plaintiff's amendment request concerning his proposed § 1981 claim against Rideout is futile. This determination makes it unnecessary to address Defendants' alternative causation arguments.

III. Count Two: § 1983 Claim Against the City and Rideout

A. **The Parties' Arguments**

Plaintiff argues his proposed § 1983 claim against Rideout and the City is not futile. (Doc. 21 at 5.) As for Rideout, Plaintiff contends "[t]he same set of facts that give rise to [Rideout's] § 1981 liability also establish a § 1983 claim. [Rideout] was personally involved in ranking the candidates for promotion by factoring in race, and either personally reduced Plaintiff's ranking because of his race, and/or was deliberately indifferent in the face of his knowledge that others were doing so, and explained as much to Plaintiff." (*Id.* at 6, citations omitted.) As for the City, Plaintiff raises "a *Monell* theory of municipal policy based on an official policy, practice, or custom." (*Id.*) Specifically, "Plaintiff has alleged the City had an official practice or longstanding custom of ranking Fire Department candidates for promotion based on race. . . . Rideout and others in the promotion decision-making process were carrying out their official duties in determining which candidates would receive promotions . . . [and] Rideout was implementing a longstanding or widespread practice used by the Fire Department in multiple promotion cycles." (*Id.* at 6-7.)

In response, Defendants identify two reasons why Plaintiff's proposed § 1983 claim

is futile. (Doc. 24 at 7-12.) First, Defendants contend the claim "is subject to a two-year statute of limitations as set forth in Arizona's personal injury statute of limitations," which "because the original complaint was filed on July 28, 2025 . . . bars a claim accruing before July 28, 2023." (*Id.* at 8.) Defendants contend the proposed claim accrued on July 18, 2023, the date Plaintiff "knew of his injury," because that is when Plaintiff "alleges he was aware of a policy to use racial factors to adjust scores" based on his 2023 conversation with Rideout. (*Id.* at 8-9.) Alternatively, Defendants contend that, at the latest, Plaintiff "knew he would be denied a promotion in the 2023 process . . . [on] July 20, 2023, when Plaintiff alleges he was shown the promotion list where his name was close to the bottom" because "[a]t that point, Plaintiff was aware of (1) the alleged policy to use racial factors in the promotion process and (2) the fact that he would not be promoted during the 2023 cycle." (*Id.* at 9.) Second, Defendants contend that Plaintiff's proposed § 1983 claim is also futile "because he fails to adequately allege that either the City or [Rideout's] 'policy' actually caused any constitutional violation." (*Id.* at 10.) Defendants contend that "the actual facts asserted by Plaintiff are that [Rideout] 'confirmed' the use of racial factors and 'explained' that the City applies these 'extra points' in the promotion process," which is insufficient to "allege that [Rideout's] conduct was the 'actionable cause' of any claimed injury." (*Id.*) Similarly, Defendants contend that "Plaintiff fails to properly allege that the City's policy prevented him from being promoted, which he claims was a violation of his constitutional rights. What he actually claims is that his rank on the promotion list was moved from 63 to 67. . . . Plaintiff does not indicate that . . . any alleged racial factors used in creating the rankings prevented him from being promoted." (*Id.* at 11.)

In reply, Plaintiff argues that his proposed § 1983 claim is subject to a four-year statute of limitations because "[s]ection 1983 claims based on the post-1991 version of § 1981 are governed by the four-year statute of limitations in 28 U.S.C. § 1658," and the proposed § 1983 claim "is based on post-contract-formation conduct and would not have been a viable claim before 1991." (*Id.* at 5-7.) Alternatively, Plaintiff argues that even Defendants' proposed two-year statute of limitations would not apply until "the actual

injury is inflicted," which did not occur until October 2023 at the earliest, i.e., when Plaintiff "met with City of Phoenix human resources employees to discuss the 2023 promotion list and whether it would be scrapped . . . [and] believed that [the City] would adequately address and correct his concerns regarding discriminatory promotion practices such that his rights would not be impaired." (*Id.* at 7-8.) As for causation in relation to Rideout, Plaintiff argues that the same factual allegations underlying the proposed § 1981 claim "plausibly suggest that Plaintiff is entitled to relief because of Rideout's 'personal involvement in the constitutional deprivation' or a 'causal connection between Rideout's wrongful conduct and the constitutional violation.'" (*Id.* at 9, quoting *Starr v. Bacca*, 652 F.3d 1202 (9th Cir. 2011).) As for causation in relation to the City, Plaintiff argues he "alleges that he was not selected for promotion because of his race, and that . . . was directly caused by the City's policy." (*Id.* at 9-10.)

### B. **Analysis**

#### 1. <u>Statute of Limitations</u>

Because 42 U.S.C. § 1983 does not include a statute of limitations, the general rule is that "[f]ederal courts in § 1983 actions apply the state statute of limitations from personal-injury claims." *Soto v. Sweetman*, 882 F.3d 865, 871 (9th Cir. 2018). But if a § 1983 claim "arose under the 1991 amendment to § 1981," the four-year statute of limitations under 28 U.S.C. § 1658(a) "supersedes any analogous state-law limitations period." *Chambers v. N.C. Dep't of Just.*, 66 F.4th 139, 142 (4th Cir. 2023) (cleaned up). *See also Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337-39 (11th Cir. 2008) ("[C]laims against state actors or allegations of § 1981 violations [are] brought pursuant to § 1983 . . . . [When] § 1981 claims were made possible by the 1991 amendments to § 1981 . . . those claims arise under a post-1990 enactment. . . . The statute of limitations applicable to [such] claims is 4 years, pursuant to 28 U.S.C. § 1658."); *Mveng-Whitted v. Va. State Univ.*, 927 F. Supp. 2d 275, 278 (E.D. Va. 2013) ("[T]he Eleventh Circuit held that § 1658's four-year statute of limitations applies to a suit under the [1991] § 1981 amendments against state actors brought pursuant to § 1983 . . . . The weight of authority around the

country supports the Eleventh Circuit's reasoning."). "[A] cause of action 'arises under an Act of congress enacted' after December 1, 1990—and therefore is governed by § 1668's 4-year statute of limitations—if the plaintiff's claim against the defendant was made possible by a post-1990 enactment." *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004).

These principles do not assist Plaintiff here because the proposed § 1983 claim does not allege a violation of Plaintiff's § 1981 rights—instead, it alleges a violation of his rights under the Fourteenth Amendment's Equal Protection Clause. (Doc. 21-1 at 16.) A discriminatory denial of a promotion, in violation of the Fourteenth Amendment's Equal Protection Clause, was sufficient to raise a § 1983 before the 1991 amendments to § 1981. *See, e.g.*, *Blake v. City of Los Angeles*, 595 F.2d 1367, 1385 (9th Cir. 1979) ("[T]he gender-based job classifications . . . violated the equal protection clause of the Fourteenth Amendment. Exclusion of all women from regular police patrol duties *and from promotions* above the level of sergeant was not substantially related to the achievement of an important governmental objective. . . . [T]he gender-based classification system violated the equal protection clause, and appellees were not entitled to summary judgment on this portion of the constitutional claim.") (emphasis added). Thus, 28 U.S.C. § 1658(a) does not supply the limitations period here—instead, the Court must look to Arizona's statute of limitations for personal-injury claims. *Soto*, 882 F.3d at 871. Arizona applies a two-year statute of limitations to such claims. A.R.S. § 12-542.

Even so, Plaintiff's proposed § 1983 claim is timely. Although state law supplies the statute of limitations applicable to Plaintiff's proposed § 1983 claim, "federal, not state, law determines when a civil rights claim accrues. Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (cleaned up). "Under federal law, the 'discovery rule' typically governs the accrual of § 1983 claims so that a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 743 (9th Cir. 2019). *See also Lukovsky*

*v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1049 (9th Cir. 2008) ("[T]he claim accrues upon awareness of the actual injury . . . and not when the plaintiff suspects a legal wrong."). "[W]here timeliness turns on factual issues *such as the date of accrual*, . . . dismissal . . . is improper." *Grossenbach v. Ariz. Bd. of Regents*, 2026 WL 672925, *5 (D. Ariz. 2026).

Here, Plaintiff alleges that he contacted HR in October 2023 to determine whether he had been injured and, at that time, he still believed Avalos would "scrap the [Captain's] list," such that Defendants' discrimination would not cost him a promotion. (Doc. 21-1 ¶¶ 52-53, 56.) These allegations are sufficient to establish that Plaintiff did not become aware of the actual injury until October 2023, less than two years before he filed his complaint in July 2025.[4] Thus, his proposed § 1983 claim is not futile due to untimeliness.

2. <u>Causation (Rideout)</u>

"In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury. To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008) (citations omitted).

Plaintiff alleges that Rideout "implemented the Fire Department's ranking policies" (Doc. 21-1 ¶ 109), which were racially biased and reduced Plaintiff's score by "fractions of points" in a competitive race in which "[t]he candidates are separated by fractions of points on the entire list." (*Id.* ¶ 42.) Plaintiff further alleges that, as a result of the improper reductions, he "was placed at #99 on the 2021 Captain's List" (*id.* ¶ 25) and had his ranking "changed twice," "[f]irst from 63 to 65; and then from 65 to 67" on the 2023 Captain's List (*id.* ¶¶ 36-37).

Although these allegations, standing alone, are insufficient to establish but-for causation—there is no allegation as to what Plaintiff's true ranking should have been (if not for the improper reduction) or how many candidates on each list were selected for promotion (which would be useful in determining whether Plaintiff's true ranking would

---

[4] Defendants do not dispute that, under the relation-back doctrine, the endpoint for the timeliness analysis is when Plaintiff filed the original complaint. (Doc. 24 at 7.)

have been high enough to qualify)—Plaintiff also alleges that his scores were significantly lowered in the four weeks that Rideout withheld the list from HR, such that he was no longer "surrounded by guys that will be promoted." (*Id.* ¶¶ 45-49.) These allegations support a reasonable inference that Rideout changed the list to stop Plaintiff from being promoted.[5] Thus, Plaintiff has plausibly alleged that Rideout's conduct was the "actionable cause" of his injury of being passed over for promotion. *Harper*, 533 F.3d at 1026.

3. Causation (The City)

Plaintiff also sufficiently alleges causation in relation to his proposed *Monell* claim against the City. "It is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also . . . demonstrate a direct causal link between the municipal action and the deprivation of federal rights," such that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty Comm'rs of Bryan Cnty, Okla. v. Brown*, 520 U.S. 397, 404 (1997). "[T]he conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains." *Id.* at 404-05.

Contrary to Defendants' contention that Plaintiff merely alleges "that his rank on the promotion list was moved from 63 to 67" (Doc. 24 at 11), the proposed amended complaint describes the City's "policy or practice and custom of assigning scores for promotion based on race." (Doc. 21-1 ¶ 102.) As discussed above, Plaintiff also plausibly alleges that Rideout's implementation of that policy was the but-for cause of his injury of being passed over for promotion. Thus, Plaintiff has plausibly alleged that the City's policy or practice of deliberately using race as a factor in promotion decisions "caused Plaintiff to be denied a promotion because of race discrimination." (*Id.* ¶ 103.)

---

[5] The reasonableness of this inference is bolstered by Plaintiff's well-pleaded allegation that "[m]any of Plaintiff's colleagues, including Fire Chief Mike Duran, called the interview board on Plaintiff's behalf to place their support behind the Plaintiff," such that Rideout admitted that "Plaintiff had more Chiefs and Captains call on his behalf than all other candidates combined." (Doc. 21-1 ¶¶ 26, 31.) Also supporting this inference is the well-pleaded allegation that Rideout stated that Plaintiff's resume was "hands down the best [the interview board] had seen." (*Id.* ¶ 32.)

IV. Punitive Damages

A. **The Parties' Arguments**

Defendants contend that the proposed amended complaint's request for punitive damages is futile because "(1) the underlying claims are futile, (2) [Rideout] is immune from punitive damages as a matter of law, and (3) the alleged conduct does not rise to the level required to support a punitive damages award." (Doc. 24 at 11.)

Plaintiff clarifies in reply that the proposed amended complaint seeks punitive damages against Rideout alone. (Doc. 27 at 10.) Plaintiff argues that "he does not sue Rideout in his official capacity, but rather in his individual capacity" and that he has "sufficiently alleged that Rideout acted with reckless indifference to his federally protected rights." (*Id.*)

B. **Analysis**

Because Plaintiff's request to add a § 1981 claim against Rideout has been denied, the Court considers only whether Plaintiff may seek punitive damages against Rideout pursuant to the proposed § 1983 claim.

1. Individual vs. Official Capacity

"Although a municipality may be liable for compensatory damages in § 1983 actions, it is immune from punitive damages under the statute. A suit against a governmental officer in his official capacity is equivalent to a suit against the governmental entity itself." *Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996) (citations omitted). Thus, "[p]unitive damages under § 1983 are not recoverable against . . . an officer sued in his official capacity, but are recoverable against officials sued in their individual capacities." *Wilson v. Maricopa County*, 463 F. Supp. 2d 987, 998 (D. Ariz. 2006).

Although the proposed amended complaint does not use the terms "individual capacity" or "official capacity," it contains various references to Rideout being sued as an "Individual Defendant" (Doc. 21-1 at 2, 15, 16 ¶ 97, 17 ¶ 109, 20), and Plaintiff has now clarified in his motion-to-amend briefing that the proposed § 1983 claim against Rideout was intended to be an individual-capacity claim. *Kentucky v. Graham*, 473 U.S. 159, 167

n.14 (1985) ("In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both. 'The course of proceedings' in such cases typically will indicate the nature of the liability sought to be imposed."). Thus, Rideout may be held liable for punitive damages pursuant to that claim.

2. Liability Standard

"A jury may award punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others." *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993) (cleaned up). "[M]alicious, wanton, or oppressive acts or omissions" are also "proper predicates for punitive damages under § 1983." *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005). To meet this standard, "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999).

Allegations of intentional discrimination usually meet this standard. *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 515 (9th Cir. 2000) ("[I]n general, intentional discrimination is enough to establish punitive damages liability."). The proposed amended complaint alleges that Rideout engaged in intentional discrimination. (Doc. 21-1 ¶¶ 109-10.) And although "[t]here will be circumstances where intentional discrimination does not give rise to punitive damages liability," *Kolstad*, 527 U.S. at 536,[6] Defendants do not argue that any of those exceptions applies. (Doc. 24 at 12.) At any rate, whether these exceptions apply is an issue of fact not properly resolved at the leave-to-amend stage. *Passantino*, 212 F.3d at 515.

V. Summary

Plaintiff's amendment request is granted except as to his request to assert the § 1981 claim appearing in Count One of the proposed amended complaint. Plaintiff must omit

---

6 These exceptions include circumstances where "the employer may simply be unaware of the relevant federal prohibition. There will be cases, moreover, in which the employer discriminates with the distinct belief that its discrimination is lawful. The underlying theory of discrimination may be novel or otherwise poorly recognized, or an employer may reasonably believe that its discrimination satisfies a bona fide occupational qualification defense or other statutory exception to liability." *Kolstad*, 527 U.S. 536-37.

that claim from the final version of the First Amended Complaint that he is being authorized to file, such that the filed version of the First Amended Complaint shall contain only four claims (the claims denominated as Counts Two, Three, Four, and Five of the proposed amended complaint, which Plaintiff shall renumber as Counts One, Two, Three, and Four of the filed version of the First Amended Complaint).

Accordingly,

**IT IS ORDERED** that:

1. Plaintiff's motion for leave to amend (Doc. 21) is **granted in part and denied in part**, as set forth above.

2. Within 14 days of the issuance of this order, Plaintiff shall file his First Amended Complaint, as authorized above.

Dated this 6th day of November, 2026.

Dominic W. Lanza
United States District Judge